The final argument of the day is Rodgers v. Rankin. Mr. Cossertway, may it please the court. My name is Jared Cossaglad and I represent Richard Rodgers who is asking this court to reverse the district court's decision to grant Dr. Rankin summary judgment and to reverse the district court's dismissal of Drs. Foss and Yusef at the screening stage. Mr. Rodgers entered the Illinois Department of Corrections with an objectively serious motive. When we get into this constitutional argument, I have a simple question. Are you making a malpractice claim under state law? No. Why not? I don't know. I couldn't answer that. Why though? You're the plaintiff's lawyer. You have to know the answer to that question. I don't know why when the complaint was filed pro se and— I understand that. And then he had appointed counsel, well, recruited counsel in the district court. But I'm asking you, you pick up these papers, which look like they might be a malpractice claim, and you argue only the Constitution of the United States. Why didn't you ask us to remand to consider a malpractice claim? Well, we didn't ask the court to remand to consider a malpractice claim because one wasn't brought. So— You don't plead law, right? Pleadings plead grievances. They don't plead legal theories, right? It might be that the plaintiff was mistaken or his prior lawyer was mistaken, but I don't see why you should think that the failure to assert a particular legal theory sets a boundary on the case when it reaches the court of appeals. In any event, there is no malpractice claim. So let's proceed. Thank you, Judge. So he entered the Illinois Department of Corrections with an objectively serious medical need. He had scoliosis and surgically implanted metal rods in his back. When he first met Dr. Rankin, Dr. Rankin became aware that he had been diagnosed by doctors with that condition and that it mandated treatment, and any layperson would know that someone with surgically implanted metal rods in their back requires the care of a medical person who understands that condition. Counsel, when does the responsibility shift from the initial radiologist to Dr. Rankin? It strikes me that it's a tougher argument to say that the responsibility here falls on Dr. Rankin, given the fact that Dr. Rankin is rejecting the conclusion of one radiology and asking to go back and saying, hey, I read these x-rays differently. There really is a problem with his hardware. So the responsibility always lied with Dr. Rankin from December of 2016 onward when Dr. Rankin confronted a medical situation that he did not understand, did not know, and did not appreciate. And at all relevant times, Dr. Rankin should have been referring Mr. Rogers to a specialist because that need was made obvious by Dr. Rankin's own ignorance of what Mr. Rogers' symptoms meant, what treatment to provide him, and what decisions should be made as appropriate for Mr. Rogers' care. Mr. Rogers informed Dr. Rankin directly that he was at high risk for spinal fractures and hardware breakage, and told Dr. Rankin that he'd had three prior incidences of that occurring and other physicians had recommended annual imaging. In that respect, the district court erred by finding that Dr. Rankin was free to exercise his own independent medical judgment and not give Mr. Rogers what he wanted and not follow the advice of other physicians because Dr. Rankin had no medical basis to be rendering a decision like that. What advice of other physicians are you referring to? The need to get annual imaging to evaluate degradation of the spine. Now, what other physician had advised Rankin that that was required? No physician advised him. Exactly. Rogers said that to Rankin. Right. Right. If you want to say that a physician has to follow other physicians' advice, you've got to provide that advice. Prisoners and plaintiffs in general will say the wildest things about their conditions. You're not suggesting that every physician is required by the federal constitution to believe everything a prisoner says about medicine, are you? No. Of course not. All right. Why should Rankin have paid any attention to what Rogers was saying as opposed to what, say, Yusuf and Foss were saying? To begin with, Dr. Rankin ... Let me answer that question twofold. In the beginning of December of 2016, the x-rays had not been taken, and Dr. Rankin admits that Mr. Rogers was already experiencing tenderness in the spine. There's a complaint in June of 2017 that the district court does not cite in her opinion, but made by Mr. Rogers to Dr. Rankin about irregular sensations in his spine and following up on his request to see a specialist because he thought something was wrong with it. And the reason that Dr. Rankin is not entitled to rely on the radiologist is because he admits he didn't. He says that he understood from the x-rays that the report was inconclusive and that he continued not to know what was wrong with Mr. Rogers' back, but he could physically observe a bulge in the area where the hardware was located. And he knew that he was having extreme amounts of pain, but he didn't know why, and he chose, instead of following up with other imaging, continuing to ... Letting him see a specialist who would have known what those symptoms meant under this peculiar condition and circumstances, he chose ... What he claims he chose is he chose to monitor a plaintiff's condition moving forward because he didn't know what was wrong. The problem with his claim is that there's no evidence in the record that any monitoring was actually done. And in fact, after the plaintiff's expert reviewed the records, there was a well-reasoned opinion that Dr. Rankin created a clinically inaccurate medical history about Mr. Rogers' care. And there are disputes of fact in the record about the nature, frequency, and extent of the complaints that Mr. Rogers has made, and if we assume that he made the complaints he claims ... So, what is the evidence indicating that the medical records are not complete or correct? If plaintiff is correct that he made the complaints that he did ... I'm asking a question, do we have that from plaintiff in the form of testimony? You have that in the form of an expert opinion that explains the basis of it, who reviewed all of the records and found that ... So there is no such testimony from the plaintiff? Right, the plaintiff did not look at his own records and say that they were accurate. Inaccurate. Did the plaintiff testify about encounters with Dr. Rankin that are documented inconsistently with the plaintiff's testimony? Yes. Where? There are. In the grievances that were submitted, Mr. Rogers explains that throughout the course of the period from 2016 through ... Are the grievances under oath? The grievances are not under oath. Okay. The grievances are his statements about what happened. There was no deposition taken of the plaintiff, but I can't recall exactly what the cases are on that, but my understanding is that it's appropriate to submit evidence from the plaintiff about what his expected testimony would be. He can do that? Yeah. In the form of sworn affidavits? To the extent that the court's not going to credit the statements that he made in his grievances about his treatment by Dr. Rankin, or consider those as evidence of what he would testify to, that is ... This is not a difficult question, but it doesn't sound like those are evidence that the plaintiff himself can use. Well, I'm not sure that any objection was made to any of those records being used at summary judgment at all, in which case those kinds of issues would have been addressed in the district court. But the evidence from Mr. Rogers is that he made complaints, and the district court credited that testimony. She simply held that and assumed that Mr. Rogers made those complaints in other clinics at other times, and would not consider those complaints in connection with the claim, because she said those complaints were not urgent. But they all add up to a body of evidence that Dr. Rankin was turning a blind eye to what was quickly becoming a very serious problem for Mr. Rogers, who spent over a year and a half with broken metal rods, scraping against his flesh. And I can see that I'm running out of time, and I would like to save at least 15 seconds for rebuttal. Certainly, counsel. Thank you. You've got 10. Thank you. Mr. Drinkwine. Thank you. And may it please the court, Chris Drinkwine and I represent the radiologists, Drs. Yusuf and Foss. Plaintiffs specifically alleged that the radiologists committed malpractice when they evaluated and misread his x-rays. These allegations are insufficient to state a Section 1983 delivered indifference claim. I have something of the same question for you. You too are proceeding as if complaints plead law or legal theories. Complaints plead grievances. They might identify facts. If a plaintiff, a prisoner who has never even been to law school, uses a word malpractice, that doesn't confine or limit the case in any way. Why should it matter? I understand that this morning more than ever, and I think the answer is... It's not simply this morning more than ever. It's that the Supreme Court has held this repeatedly. Rule 8 requires a shortened plaintiff's statement of the claim in order to... The claim, not of the legal basis for the claim. Any sins in construing the complaint incorrectly, Your Honor, are forgiven by the express explanation in the District Court's Merit Review Order that he had the discretion to allow amendment on good cause shown or under Federal Rule of Civil Procedure 15. And yet, even after having taken the depositions of the radiologists, even after having retained counsel, if there was sufficient facts revealed in the deposition to bring claims for deliberate indifference, then he could have and should have moved to amend his complaint in order to state a claim for deliberate indifference. It sounds like you're arguing once again that you have to plead law in the complaint. You pleaded grievance, and then in later papers in the District Court, you might articulate a legal theory behind the grievance. You do not plead law. It's a simple proposition. And I understand that, Your Honor, but the Merit Review Order was over and done with based on the District Court's construction of the complaint as only bringing Section 1983 deliberate indifference claims. And with an opportunity to correct that if that was not his intent, although we heard this morning that it's not his intent now, and it wasn't his intent then, to bring a medical malpractice. No, no, no, no, no, no. Mr. Cossaglad said that he was not pursuing a malpractice theory. He did not purport to have access to the intent of Mr. Rogers, as if that mattered. Right. I'm sorry, let's just proceed. Plaintiff's contention regarding the fact that... Intention is irrelevant. Maybe I can't desist. The question is whether a claim has been pleaded. What's in people's heads is not the subject of notice under Rule 8 or Rule 12. And plaintiff had the opportunity to explain that to Judge Baker, if that's a mistake that he made. And he didn't afford himself of that opportunity, despite the express explanation that he could. He should have said, no, Your Honor, I'm trying to proceed under a medical malpractice claim. Or no, Your Honor, I'm trying to proceed... I have stated... You're saying he should have been clearer about what law he was pleading. And I'm saying, according to the Supreme Court of the United States, complaints don't plead law. They don't. They don't have to. They plead grievances. Law comes later. I heard you, Your Honor. And the other component, however, is where you make a specific allegation of negligence, like they did in this case. They evaluated the x-rays and they misread them. That's a specific factual allegation of negligence. That's inconsistent with a deliberate indifference mental state. So said this court in the Antonelli v. Sheehan case. In his reply brief, the plaintiff highlights the wrong standard, citing pre-Bell-Atlantic v. Twombly authority urges this court to apply the old Connolly v. Gibson no-set-of-facts standard to conclude that the district court erred in dismissing his claims. According to the plaintiff, it's possible that the radiologist did not even read the x-rays and it's possible that they intentionally, if they did read them, intentionally misrepresented their findings. But it's clear that in the wake of this court's decisions in both Lovano and Arnett v. Webster, it's clear that the plausibility standard applies to 1915 review of policy complaints. Yes, thank you, counsel. Your Honor. Your time has expired, counsel. Thank you, Judge. Mr. Jannettan. Good morning, Your Honor. May it please the court, Peter Jannettan for Dr. William Rankin. I would like to address a couple of the comments made by plaintiff's counsel. He suggested that the first x-ray in May 2018 was inconclusive. That was not true. That was discussed with Dr. Rankin during his deposition and he was very clear that the x-ray was not inconclusive, that it was conclusive to him. The x-ray indicated that the Harrington rods, the report indicated at that time that the anatomic position as they expected to be. And the rough time frame for that is? That was in the May of 2018. There was obviously a second x-ray later that showed the breaks more clearly and if you have the advantage of that second x-ray, you can look at where the breaks are at that one and go back to the first one and find a very small discontinuity in one of the rods. Although Dr. Rankin is the one who discovered that, not the initial radiologist. In the second x-ray. In the second x-ray, that's correct. And that discontinuity kind of brings me to one of the other comments in plaintiff's reply that I want to address, that he's indicated that there is a bulge in the muscles that was ignored. And if you go to Dr. Rankin's testimony, it's page 1551 of his deposition, he was talking about there being a prominence in the muscle along his spine. And plaintiff's counsel asked him what he meant by that. He described that as well. It just bulges out a little bit. And so plaintiff's counsel has tried to read that as there's some hardware sticking out causing a bulge, which is not the case. No one has said that. And if you look at the x-rays from 2018, you'll be clear to anyone that that would not be the case. This is a very tiny discontinuity at that point in time. Plaintiff's counsel has also accused Dr. Rankin of creating a false record regarding the May 2018 visit. And I pressed Dr. Harrington about that assertion in his deposition around the beginning of page 48. And what he said was that the May 2018 note by Dr. Rankin indicated that he had been complaining of back pain for several months. And he claims that that note was false because it did not indicate that he had chronic back pain. And I went through with Dr. Harrington that Dr. Rankin had been seeing him since 2016 for chronic back pain, that the record was replete with documentation that chronic back pain and medications that Dr. Rankin had prescribed for him. So that was not a false record. And I want to be very clear about that. The characterization of Dr. Rankin as deliberately indifferent in this case, I think, is just can't be more incorrect. He should be the hero of the story, not the villain. He is the one who found this error in the second x-ray, who got the treatment that he needed. And up to that point in time, managed his pain as best he could. And whenever a complaint was made about his pain, he adjusted medications, and we kind of set that forth in the record. The list of medications for Mr. Rankin, or for Mr. Rogers, rather, seems unusually long for prisoners with chronic pain. He had a number of ongoing conditions, including hepatitis and hypertension, for which he was treated, and importantly, for which he was seen on a regular basis. If you look at Dr. Rankin's deposition, beginning around page 86, he goes through some of those other visits. And on most of those visits, Mr. Rogers did not make any complaints about his back pain. Occasionally, he would, and it would be addressed on at least one of the visits. He just said that the gabapentin had been added to a previous visit, was helping him during the day. So that was something that was raised regularly with him. Mr. Rogers also saw nurses twice a day because he was receiving med pass. He had the ability to submit sick calls at any time. So he had the ability to raise more issues with his back if he needed to, as far as the pain management. And Dr. Harrington, the expert himself, said he did not take any issue with the medications that were prescribed. His only issue was the lack of referral. And at no point was Dr. Rankin actually aware of any problem with the Harrington rods prior to that October 2019 x-ray. So he could not be deliberately different to the condition if he was not actually aware of that. And that's fairly clear from the case law. How old was Mr. Rogers between 2016 and 2022? I apologize. I don't recall that off the top of my head. I want to say he's a middle-aged guy. I don't think he was particularly young or particularly old. And just so we get the sequence correct, after Dr. Rankin corrects the second set of x-rays, he then refers to an orthopod who refers to a neurologist. Correct. And then Dr. Rankin continues the recommendations, the consultations with the specialists. Is that correct? That's correct. And I don't think there's really any criticism of the treatment from October going forward. There was some suggestion at some point that he should have been referred to a neurologist initially. But if you look at Mr. Rogers' grievances, his initial procedure was done at Midwest Orthopedics at Rush. So the orthopedic was certainly an appropriate consideration at that time. And the collegial review that was necessary here, if I understood the calendar, took place over one business day. They took place very promptly and all of his were approved. I've had my issues with Wexford's procedures from time to time, but that one stood out, particularly since Friday the 13th of March, 2020. It was a pretty memorable day for all of us. Yes. I think so. But they did move promptly on all of those. And if it makes you feel better, Judge, I believe they have gotten rid of the collegial review process. Okay. Thank you, Your Honor. Thank you. Thank you very much. Mr. Klotz, I'm glad I'll give you two minutes for rebuttal. Thank you very much. I'd like to address two things with those two minutes. The first is that Dr. Rankin's conclusion that the plaintiff suffered from chronic pain is not consistent with the reports of pain that he received from Mr. Rogers, which were at all times acute in nature with recent onsets within a matter of weeks or months that gave him trouble sleeping and eating, et cetera. So a matter of degree, you're saying? No. Chronic pain is pain that has persisted for a long period of time. It does not appear to abate. Acute pain is something that comes on recently. And this is a patient who knew what broken hardware felt like in his back and told the doctor that that's what it felt like because he knew what he was experiencing. Does the record indicate how many times his hardware had broken previous to incarceration? Three. Thank you. And so I would just call this court's attention to page 62 of Dr. Rankin's transcript where he expressly says that he understood that the radiologists were not claiming that nothing was wrong with his Harrington rods. He understood from the report the x-ray was not telling him what the cause was. And a patient with metal rods in their back who's reporting that it feels like it's broken, a specialist was made obviously necessary consistent with this court's opinion in Barry V. Lutze. If there are no further questions. Thank you very much, counsel. Thank you. The case is taken under advisement and the court will be in recess.